# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | Amy J. St. Eve |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8468 | **DATE** | January 10, 2003 |
| **CASE TITLE** | Villalovos v. Sundance Associates, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6), or in the Alternative, to Strike Pursuant to F.R.C.P. 12(f)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion to dismiss (#2-1) is **GRANTED** in part, and **DENIED** in part. Count III is dismissed while Counts II and IV stand. Furthermore, the Court grants Plaintiff's request to voluntarily dismiss Count I. Finally, Defendant's motion to strike (#2-2) is **DENIED**. Plaintiff shall file a First Amended Complaint by January 31, 2003. Status hearing set for February 10, 2003, at 9:15 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JAN 13 2003 date docketed | 12 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | 15 docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| JHC | courtroom deputy's initials | date mailed notice | |
| | | mailing deputy initials | |

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TONYA VILLALOVOS, )
)
Plaintiff, )
) NO. 01 C 8468
v. )
) JUDGE WILLIAM J. HIBBLER
)
SUNDANCE ASSOCIATES, INC., )
THE ODYSSEY GROUP, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Tanya Villalovos, a citizen and resident of Illinois ("Plaintiff"), alleges Defendants Sundance Associates, Inc., The Odyssey Group, both believed to be California corporations, ("Defendants"), published "lude" and "scandalous" statements about her without her knowledge or consent. Plaintiff filed this diversity lawsuit seeking relief under three branches of the invasion of privacy tort: appropriation of name and likeness (Count II); publicity given to a private life (Count III); and publicity placing a person in a false light (Count IV).[1] Defendants have moved to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, to strike the complaint pursuant to Rule 12(f). For the reasons set forth below, Defendants' motion to dismiss is **granted in part and denied in part**, and the motion to strike is **denied**.

## I. BACKGROUND

Plaintiff alleges the following facts in her complaint and fleshes out many of them in her Response to Defendants' motion. During June of 2001, Defendants published and distributed

---

[1] Plaintiff voluntarily dismissed Count I of her complaint, alleging intrusion upon seclusion.

nationwide issue #92 of LG Looking Glass, a hard-core pornographic magazine. The issue in question contained a personal advertisement that included a photograph of a woman, below which appeared the following copy:

> Submissive married woman seeks weekend releases with groups of well hung black gentlemen. Totally insatiable white wife will do absolutely anything I'm asked to do. [The advertisement then sets forth several graphic examples of what the subject is willing to do.] Use me, abuse me, strip me in public, share me with your friends, then drive me home to my husband when the weekend is done. [The advertisement concludes with a first name, last initial, and home address—all in bold type.]

The first name, last initial, and full address are Plaintiff's. The woman in the photograph is not Plaintiff, though. Plaintiff alleges Defendants, with malice, recklessly and with wanton disregard published the above advertisement, which Plaintiff characterizes as "lude, offensive, derogatory, untrue, slanderous, and evil." (Compl. ¶13). Plaintiff also alleges Defendants' use of her name helped sell its magazines. Plaintiff claims she suffered severe damages when, as a result of the advertisement, strangers sent "astonishing, lude, [and] offensive" communications to her at her home address.

## II. ANALYSIS

A motion to dismiss under Rule 12(b)(6) should test the sufficiency of the complaint rather than address the merits of the case. This Court must construe all allegations in the complaint in a light most favorable to the plaintiff, taking all well-pleaded facts and allegations within the complaint as true. *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). Because Plaintiff's allegations are taken as true, Defendant must meet a high standard in order to have the complaint dismissed for failure to state a claim upon which relief may be granted. Indeed, the allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Hartford Fire Insurance Co. v. California,* 509 U.S. 764, 125 L. Ed. 2d 612, 113 S. Ct. 2891 (1993). This Court must construe the present pleadings liberally in compliance with the notice pleading provision of the federal rules. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993). However, this Court need not stretch the allegations beyond their sensible and reasonable implications. *Chan v. City of Chicago,* 777 F. Supp. 1437, 1440 (N.D. Ill. 1991).

The Restatement (Second) of Torts § 652A (1977) recognizes four branches of the invasion of privacy tort. Plaintiff has alleged three: publicity placing a person in a false light, publicity given to a private life, and appropriation of name and likeness. Defendants move to dismiss each cause of action, contending Plaintiff has failed to state a claim.

### A. *Publicity placing a person in a false light (Count IV)*

To state a cause of action under Illinois law for publicly placing another in a false light, a plaintiff must allege three elements: first, that defendant caused plaintiff to be placed before the public in a false light; second, that the false light in which plaintiff was placed was highly outrageous; and third, that defendant acted "with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false." *Kolegas v. Heftel Broadcasting Corp.,* 607 N.E.2d 201, 209-10 (Ill. 1992); *Lovgren v. Citizens First Nat'l Bank of Princeton,* 534 N.E.2d 987, 989 (Ill. 1989).

Plaintiff satisfies the first element by alleging that Defendants published without consent, in a personal advertisement within a nationally distributed magazine, "untrue," "slanderous," and "false" statements about Plaintiff's sexual desires and wants and listed her first name, last initial, and full postal address. Publication in a magazine or newspaper is a quintessential method for

-3-

placing people before the public. *See Douglass v. Hustler Magazine*, 769 F.2d 1128, 1137 (7th Cir.1985); *Lovgren*, 534 N.E.2d at 990.

Defendants nonetheless contend Plaintiff has failed to state a claim because she has not alleged an identity between herself and the picture accompanying the published statements. The Court disagrees. Plaintiff need not allege such an identity; rather, Plaintiff must allege that Defendant placed her, and not some other person, before the public. Plaintiff claims she received lewd responses to the advertisement at her personal address which was listed in the magazine. A valid address may identify a person more specifically than just a name, which often identifies not just one but several people. *See McNutt v. New Mexico State Tribune Co.*, 538 P.2d 804, 809 (N.M. App. 1975). At the very least, those who sent letters to Plaintiff were able to identify her. Plaintiff's allegations, therefore, show Defendants did place her before the public. Furthermore, a reader of Defendants' magazine could reasonably assume that the woman named in the advertisement, Plaintiff, is the woman depicted in the advertisement. Nothing suggests otherwise.

With respect to the second element, outrageousness, Plaintiff alleges the published words and picture were "lewd," "offensive," and "derogatory." The advertisement imputes Plaintiff with the desire to commit adultery and to be used and abused as a sex object. In *Lovgren*, the defendant disparaged plaintiff's financial integrity by making others believe he would sell property he had no intention to sell. 534 N.E.2d at 420. In *Kolegas*, the defendant implied that a mother and son had deformed heads and stated that the mother was so unattractive that her husband would only have married her in a shotgun wedding. 607 N.E.2d at 210. In both cases, the Illinois Supreme Court held that a trier of fact could find defendants' statements outrageous. *Id.; Lovgren*, 534 N.E.2d at 420. Likewise, the statements in this case also could be found outrageous.

Finally, as to the requirement of actual malice, the third element, Plaintiff alleges

-4-

Defendants published the personal advertisement with reckless disregard and that "malice is the gist of this action." (Compl. ¶ 30.) In federal court, such bare-bones notice pleading is acceptable. Therefore, Plaintiff states a claim for false light invasion of privacy.

### B. *Publicity given to a private life (Count III)*

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement (Second) of Torts § 652D (1977). Defendants argue that a cause of action for publicity given to a private life can only arise when a defendant has publicized true facts, and not, as Plaintiff alleges in this case, when the defendant has publicized falsehoods. There is merit to this contention. Section 652D "provides for tort liability . . . for publicity given to *true* statements of fact." Restatement at 383. Thus, to the extent the personal advertisement contained wholly false information, this theory provides no recovery. *See e.g., Ritzmann v. Weekly World News, Inc.*, 614 F. Supp. 1336, 1340 (N.D. Tex. 1985). Since Plaintiff alleges the statements Defendants published here are false, she has not stated a claim for publicity given to a private life. As such, Count III is dismissed.

### C. *Appropriation of name and likeness (Count II)*

Prior to 1999, the appropriation tort was solely a common law creation. The Restatement (Second) of Torts § 652C (1977) stated that "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." In 1999, though, the Illinois legislature passed the Right of Publicity Act, 765 ILCS 1075/1 *et. seq.* (the "Act"), supplanting the common law appropriation tort. *Villa v. Brady Publishing*, No. 02 C 570, 2002 WL 1400345, at *3-4 (N.D. Ill. Jan. 27, 2002). However, the Act does "not affect an individual's

common law rights as they existed before the effective date of this Act." 765 ILCS 1075/60. Therefore, the Court examines both the statutory language and common law to determine the scope of the appropriation tort.

The Act provides that "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person." 765 ILCS 1075/30(a). This branch of the privacy doctrine is designed to protect a person from having his name or image used for commercial purposes without consent. See *Douglass*, 769 F.2d at 1138 (finding defendant appropriated the value of model's likeness when it published nude pictures of her without consent). According to the Restatement, the purpose of this tort is to protect the "interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness." Restatement (Second) of Torts § 652C, cmt. a (1977). *See also Dwyer v. American Exp. Co.*, 652 N.E.2d 1351, 1355 (Ill. App. 1st Dist. 1995).

To state a claim for relief under the common law appropriation tort, "it [was] vital that some 'appropriation' be alleged." *Hooker v. Columbia Pictures Industries, Inc.*, 551 F. Supp. 1060, 1061 (N.D. Ill. 1982). Plaintiff alleges Defendants used her name for commercial gain i.e., in conjunction with the sexually explicit words and picture, to increase its magazine sales. Defendants respond, as they did to the false light charge, that Plaintiff has not alleged an identity between herself and the picture accompanying the personal advertisement. But as the Court has already noted *supra*, this argument lacks merit. Defendants also contend Plaintiff's name had no value to appropriate, and that "until the value of a name has in some way been appropriated, there is no tort." *Id. quoting* Restatement (Second) of Torts, § 652C, cmt. c (1977).

While the Illinois state courts have not specifically addressed this question, other states have divided over whether an appropriation can occur when a plaintiff's identity, prior to a

defendant's use, has no commercial value. The Utah Supreme Court requires that a plaintiff's identity have intrinsic value. *Cox v. Hatch*, 761 P.2d 556, 564 (Utah 1988). In *Cox*, a postal employee who posed for a photo with Senator Orrin Hatch could not prevent Hatch, under an appropriation theory, from using the photo in campaign advertisements. *Id.* The Utah court reasoned that intrinsic value cannot "be shown just because [a defendant] may have obtained some benefit by using the [plaintiff's identity] when the benefit is the same as [defendant] would have had from using the likeness of a number of other[s]." *Id.*

In contrast, the Colorado Supreme Court rejects the requirement of intrinsic value, on the basis that when a plaintiff alleges damage to her commercial interests, then requiring that her identity have some initial value may make sense; however, when a plaintiff alleges emotional damages, initial value is not necessarily relevant. *Joe Dickerson & Assoc., LLC v. Dittmar*, 34 P.3d 995, 1002 (Colo. 2001). In *Dittmar*, defendant published, in his investigation agency's regular newsletter, the plaintiff's name, likeness, and a narrative about how defendant had secured plaintiff's prosecution for fraud. *Id.* at 997. The Colorado court reversed a lower court decision that had denied relief to plaintiff due to her failure to allege that her identity had value, holding that "[w]e do not require the plaintiff, who seeks only personal damages, to prove the value of her identity." *Id.* at 1002. Indeed, the court explained, "[a] plaintiff whose identity had no commercial value might still experience mental anguish based on an unauthorized use of her name and likeness," and few courts require a plaintiff to show the value of her identity to recover for mental suffering. *Id.*

The Illinois appropriation tort, as so-far recognized in this district court, is more in line with Utah's property-rights oriented approach. For example, in *Hooker, supra*, a famous woodcarver's claim of appropriation failed because the defendant did not avail itself of the woodcarver's

reputation for woodcarving when using his name. 551 F. Supp. at 1062. The district court defined appropriation as "more than the mere coincidental use of a name that happens to be the same as that of the plaintiff." *Id.* In another case decided after *Hooker*, a martial artist's claim of appropriation failed when he could not show, *inter alia*, that his identity had commercial value. *Pesina v. Midway Mfg. Co.*, 948 F. Supp. 40, 42 (N.D. Ill. 1996), *citing Bi-Rite Enter.'s, Inc. v. Button Master, Inc.*, 555 F. Supp. 1188, 1198-99 (S.D.N.Y 1983). While *Bi-Rite* does not directly rely on Illinois law, its adoption by the *Pesina* court, combined with the court's statements in *Hooker*, militate in favor of requiring that a plaintiff show his or her identity has some unique value that can be appropriated.

However, both *Hooker* and *Pesina* are district court decisions that predate the Act. Significantly, the Act makes no effort to limit the tort to instances where a plaintiff can demonstrate intrinsic value; it simply protects an individual's identity. Indeed, an individual is broadly defined as meaning "any living or deceased natural person, regardless of whether the identity of that individual has been used for a commercial purpose during the individual's lifetime." 765 ILCS 1075/5. Likewise, an identity encompasses "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." *Id.* Nowhere does the Act require an identity to have commercial value. To the contrary, the Act appears to cover all individuals, whether or not their identities have been used commercially.

This Court therefore finds the Colorado approach, when considered in conjunction with the text of the Illinois statute, more persuasive, particularly since the case at bar raises only issues of personal damages, not commercial damages. Therefore, Plaintiff need not allege that her name

has intrinsic value. Accordingly, Plaintiff states a claim for the appropriation tort in Count II of her complaint.

### III. MOTION TO STRIKE

Rule 12(f) motions are not favored and will be denied unless the language in the pleading has no relation to the controversy and is unduly prejudicial." *Simmons v. John F. Kennedy Medical Ctr.*, 727 F. Supp. 440, 442 (N.D. Ill. 1989). Plaintiff's complaint clearly alleges facts that are entirely relevant to the dispute. Furthermore, Defendants' arguments in favor of striking are not specific and merely attack the complaint as repetitive, immaterial, and scandalous. As such, Defendants have failed to persuade the Court that Plaintiff's complaint should be stricken.

### IV. CONCLUSION

Defendants' motion to dismiss is granted as to Count III, and denied as to Counts II and IV. Additionally, Defendants' motion to strike is denied.

**IT IS SO ORDERED.**

_____
AMY J. ST.EVE, DISTRICT JUDGE

DATED: January 10, 2003